Argued March 31, reversed and remanded June 26, petition
for rehearing denied August 6, 1975

CONSOLIDATED ELECTRICAL DISTRIBUTORS,
INC., *Appellant, v.* JEPSON ELECTRICAL
CONTRACTING, INC., ET AL (72-417),
*Respondents.*

CONSOLIDATED ELECTRICAL DISTRIBUTORS,
INC., *Appellant, v.* JEPSON ELECTRICAL
CONTRACTING, INC., ET AL (72-418),
*Respondents.*

537 P2d 80

*Robert L. Allen,* Portland, argued the cause for appellant. With him on the briefs were Chris L. Mullmann, Robert K. Winger, and Morrison, Dunn, Cohen, Miller & Carney, Portland.

*James A. McClaskey,* Portland, argued the cause for respondents. With him on the brief were Stuart W. Hill, and Gilley, Busey & Porter, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, HOWELL, and BRYSON, Justices.

HOLMAN, J.

Plaintiff filed individual suits to foreclose separate liens against two owners and the cases were consolidated for trial and upon appeal. Plaintiff appeals from decrees holding both liens invalid.

Defendants Thunderbird-Klamath Falls, Inc. (Thunderbird), and Nyback Flower Fair (Nyback), each constructed an individual building upon respectively owned adjacent pieces of property. The construction of both improvements was undertaken by a common general contractor with whom each defendant entered into a separate contract. Plaintiff, a materialman, furnished a subcontractor with electrical supplies which were used in the construction of the improvements on both properties.

Plaintiff filed one lien document against both pieces of property. It segregated the amounts of materials which were furnished the respective jobs, as follows, "* * * the contract price and reasonable value of said materials furnished by the claimant as aforesaid was and is the sum of $12,962.21 for Thunderbird Motel, Inc., and $1,841.88 for Nyback's Flower Fair," and subsequently included the following recapitulation:

"Thunderbird Motel, Inc.        $12,962.21
Nyback's Flower Fair              1,841.88
Balance to Claimant             $14,804.09"

Although the real property of each defendant was described separately in the lien, there was no designation of the respective ownership. The printed statement on the standard lien form indicated only that "* * * claimant claims a lien for the amount of the above claim upon the building and/or improvement hereinbefore described and upon the land upon which said building and/or improvement is located,

\* \* \*." Therefore, it was impossible for one unfamiliar with the description of the property of either owner to determine which parcel of property belonged to which owner. Thereafter, and within the time to file a lien, plaintiff filed a partial satisfaction in the sum of $1,028.58 without designating which defendant was being credited, or, if both were being credited, the amount credited to each.

However, in accordance with ORS 87.020(3), plaintiff gave notice of foreclosure to Thunderbird, as follows:

"\* \* \* \* \*.

"The lien was recorded in Volume M72, page 2707, in the Klamath County Courthouse on March 13, 1972, comprised of $12,962.21 for materials expended for Thunderbird Motel.

"This lien has been partially paid, satisfied and discharged in the amount of $1,028.58 as recorded in the Klamath County Courthouse, Volume M72, page 2953, on March 20, 1972.

"The total amount remaining due and owing for the Thunderbird Motel portion is $11,678.82.

"\* \* \* \* \*."

The notice to Nyback contained the following:

"\* \* \* \* \*.

"The lien was recorded in Volume M72, page 2707, in the Klamath County Courthouse on March 13, 1972, comprised of $1,841.88 for materials expended for Nyback's Flower Fair.

"The total amount remaining due and owing is on the Nyback Flower Fair portion of the job and is $1,721.18.

"\* \* \* \* \*."

The first question concerns the propriety of using a single document to file liens on two pieces of property of different owners which were improved under separate contracts. In *Beach v. Stamper,* 44 Or

4, 72 P 208, 102 Am St R 597 (1903), a contractor entered into four separate contracts with a single owner to build four dwellings. The contractor then entered into a single contract with a subcontractor, the lien claimant, to furnish labor and materials in painting the four houses. The subcontractor's contract specified a single amount for all four houses but also showed the amount for each house. He stated generally in his claim that his labor and materials were furnished all the buildings but specified therein the individual outstanding amounts for each house. The court held the lien invalid because the primary contractor, as the statutory agent under the lien, did not have the authority to make a broader contract with the subcontractor (one for all four houses) than the contract he made with the owner (one for each house). Therefore, the subcontractor, the lien claimant, could file one lien not on all four houses but only on each house for which work and materials were furnished.

If *Beach* is good law, it disposes of the present case. The only distinction between *Beach* and the present case is that here, the land upon which the two structures were built was owned by two different parties, whereas in *Beach* all the property was owned by one party. Because of this difference the instant case presents more difficulty for the lien claimant than did Beach's situation.

■ Lien law, for the sake of certainty, is subject to somewhat arbitrary rules. However, the modern trend is to dispense with arbitrary rules which have no demonstrable value in a particular factual situation. The rationale of *Beach* seems entirely artificial and based on an assumption that the lien must be treated as one for the entire amount on each and every property improved despite the segregation of the labor and materials furnished to each property. This raises the question of why it is necessary to

so treat the lien document and to hold it invalid when it shows on its face the amount of materials and/or labor attributable to each piece of property. It must be so treated only if this court deems it necessary. If we hold, in a situation like the present one, where the face of the lien shows the amount attributable to each piece of property, that each piece can be released by paying the amount of labor and materials shown as having been furnished to it, such will be the case, and we see no harm that could result therefrom.

■ Whether the lien document purports to encumber each piece of property for the combined amount of all liens is a matter of interpretation, and we believe a construction of the entire document leads to a contrary conclusion. There would be no object in meticulously setting forth the separate amounts attributable to each piece of property if a lien was being claimed for the total on every piece. This information would be irrelevant. We hold such a statement constitutes a separate lien for each amount on each separate piece of property.

■ It is also argued that the lien document does not show the amount attributable to each piece of property because it does not designate which piece of property belongs to which owner. Five separate parcels were described in the lien document; the first four belonged to Thunderbird and the fifth to Nyback, although they were not so designated. The purpose of not commingling property descriptions is to provide a means whereby those interested can ascertain if the property in which they are interested is involved, and, if so, the charge upon it. The rationale behind such a ruling is somewhat similar to the rationale behind the prohibition of combining lienable and non-lienable items: there is no means of determining the amount which must be paid to release the property without incurring the costs of litigation in defending

a foreclosure. *Benj. Franklin S&L v. Hallmark*, 257 Or 436, 479 P2d 740 (1971).

Where such information is reasonably available, there is no reason for invalidating the liens merely because there is included in the same document a description of another piece of property. Surely each owner named in the lien, or person taking an interest through him, is capable of telling if the description of the owner's property in which he is interested is involved when such description is set forth separately in the lien. See *Hays v. Pigg*, 267 Or 143, 148, 515 P2d 924 (1973). This is not a case where the properties of both owners were included in one metes and bounds description and technical skill would be necessary to separate them to determine if one's property was involved.

■ The question is also raised concerning the effect upon the liens of the partial satisfaction which was filed in the sum of $1,028.58. Defendants contend that because it was not indicated in the satisfaction whether it concerned materials supplied to Thunderbird or to Nyback, or to them collectively, it was impossible for them to determine the encumbrance on each property; and, in the absence of their being able to make this determination, the lien is invalid in accordance with the rationale of *Benj. Franklin S&L v. Hallmark*, *supra*.

The present situation does not fall within the holding of that case because here the notice of foreclosure, a requirement of ORS 87.020(3), specified in each instance the exact amount then presently owing by Thunderbird and by Nyback and demonstrated that the recorded credit was in favor of Thunderbird. Both owners had adequate notice that their property was involved and of the amount of the lien on their respective properties; thus, each had an opportunity

to settle with complete knowledge prior to incurring any costs of litigation.

It is our conclusion that the trial court erred in failing to foreclose plaintiff's liens. The case of *Beach v. Stamper, supra,* is overruled insofar as it treats a lien like the present one as an attempt to encumber all pieces of property described therein for the sum of the amounts attributable in the lien to each piece. We do not look with favor upon filing two liens in one document where each lien is against property of different owners. However, in this case, we cannot see where any prejudice has been suffered by the defendants in any material respect.

■ Because of the manner in which it filed its liens, plaintiff induced a defense, considering the prior state of the law, when it could easily have filed its liens separately and avoided the multiple problems which have arisen. For this reason we hold it would not be reasonable to allow plaintiff any attorney's fees upon foreclosure.

The decrees of the trial court are reversed and the cases are remanded with direction to enter decrees of foreclosure of plaintiff's liens. Costs are allowed to neither party.